1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| ALL FOR KIDZ, INC.,<br><br>               Plaintiff,<br><br>      v.<br><br>AROUND THE WORLD YOYO ENTERTAINMENT COMPANY, a Washington Corporation; JOHN V. FOX and SUSAN C. FOX, husband and wife; MARVIN BERESFORD, individually; LESLIE LAAS and TRACY LAAS, husband and wife; MEL STEINMEYER and DENISE STEINMEYER, husband and wife; and DOES 1-20,<br><br>               Defendants. | NO.  2:13 cv 2001<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, TRESPASS, INTERFERENCE WITH BUSINESS RELATIONS, CONSPIRACY, BREACH OF CONTRACT, AND INJUNCTIVE RELIEF<br><br><br>JURY DEMAND |

23

24

      Plaintiff All for Kidz, Inc. hereby alleges the following causes of action against Defendants:

25

26

COMPLAINT - 1 of 24

## I. PARTIES

1.1     Plaintiff All for Kidz, Inc., is a Washington corporation having a principal place of business in Lynnwood, Washington.  All for Kidz, Inc. is the successor to Arne Dixon Entertainment, Inc. (collectively "AFK") and is actively engaged in the business of developing, producing, promoting and presenting copyrighted motivational assembly programs for schools and students across the country and internationally.  Having paid all fees and penalties due the State of Washington under existing law, AFK is entitled to bring and maintain this action.

1.2     Defendant Around the World Yoyo Entertainment Company ("ATW") is a Washington corporation with its principal place of business in Bothell, Washington.  ATW has engaged or is presently engaging in yoyo based assembly presentations to schools in several states in unfair competition with AFK using former AFK employees, AFK copyrighted material and AFK trade secrets.

1.3     Defendants John V. Fox and Susan C. Fox are husband and wife constituting a marital community under the laws of the State of Washington and residents of Bothell, Washington. John V. Fox is a former employee of AFK, President of ATW, and has engaged or is presently engaging in yoyo based assembly presentations to schools in several states in unfair competition with AFK using AFK copyrighted material and AFK trade secrets.  Susan C. Fox is Vice President of ATW.  All acts by John V. Fox and/or Susan C. Fox alleged herein were performed individually and on behalf of the Fox marital community.

1.4     Defendant Marvin Beresford is a resident of the state of Kentucky, a former employee of AFK and is or has been an employee or independent contractor of ATW.  Marvin Beresford has engaged or is presently engaging in yoyo based assembly presentations to schools in several states in unfair competition with AFK using AFK copyrighted material and AFK trade secrets.

COMPLAINT - 2 of 24

1.5     Defendants Leslie Laas and Tracy Laas are husband and wife constituting a marital community under the laws of the State of Washington and residents of Washington. Leslie Laas is a former employee of AFK and is or has been an employee or independent contractor of ATW.  Leslie Laas has engaged or is presently engaging in yoyo based assembly presentations to schools in several states in unfair competition with AFK using AFK copyrighted material and AFK trade secrets.  All acts by Leslie Laas alleged herein were performed individually and on behalf of the Laas marital community.

1.6     Defendants Mel Steinmeyer and Denise Steinmeyer are husband and wife constituting a marital community under the laws of the State of Washington and residents of Washington.   Mel Steinmeyer is a former employee of AFK and is or has been an employee or independent contractor of ATW.  Mel Steinmeyer has engaged or is presently engaging in yoyo based assembly presentations to schools in several states in unfair competition with AFK using AFK copyrighted material and AFK trade secrets.  All acts by Mel Steinmeyer alleged herein were performed individually and on behalf of the Steinmeyer marital community

1.7     Defendant Does 1-20 are persons who presently are unknown to AFK who have been or are performing or materially participating with ATW and named Defendants in performing yoyo based assembly presentations to schools in several states in unfair competition with AFK using AFK copyrighted material and AFK trade secrets.

## II. JURISDICTION AND VENUE

2.1     The U.S. District Court for the Western District of Washington has subject matter jurisdiction over the violations of copyright alleged herein pursuant to 28 U.S.C. §1331 and §1338.  This Court has supplemental jurisdiction over the remaining related state and

COMPLAINT - 3 of 24

common-law claims derived from a common nucleus of operative facts that form part of the same case or controversy.  28 U.S.C. § 1367(a).

2.2    Venue is proper in the U.S. District Court for Western Washington at Seattle where some Defendants reside and pursuant to the agreements between the parties.

### III.  FACTS

3.1    AFK incorporates and re-alleges the facts of paragraphs 1.1 through 2.2 above.

3.2    AFK, and its predecessor Arne Dixon Entertainment, Inc. ("ADEI"), have been developing, producing, promoting and presenting motivational assembly programs for over twenty-three (23) years to student groups across the United States and worldwide in such countries as Canada, England, Australia and New Zealand.  AFK has developed a unique program combining an entertaining, professional yoyo presentation with a positive character-building message.  AFK provides its assembly program to school events free of charge in exchange for the opportunity for AFK to sell its products at the school following the assembly.  AFK provides its services and products under registered trademarks "All for KIDZ" and "The NED Show."

3.3    AFK's assembly program has been a tremendous commercial success and AFK has gained national and international prominence, including performing several times at the White House.   AFK presently has over sixty (60) full-time employees, including seventeen (17) full-time professional presenters.   AFK presents assembly programs at over 5,500 schools per year and reaches over 2.25 million students annually.

### AFK'S CONFIDENTIAL, COPYRIGHTED AND BRANDED MATERIAL

3.4    AFK utilizes specialized know-how, procedures and materials developed over its years of experience to create, produce, promote, book and present its motivational assembly programs and product sales.   This specialized know-how, procedures and materials

COMPLAINT - 4 of 24

encompass all of the critical aspects of AFK's business, including the identification and cultivation of school contacts, the marketing approach, the timing and sales techniques used to schedule assemblies and market saleable products, the product mix, the development of each assembly program, the training of the presenters and support staff, and the substance, style and appearance of the presentations and all related written materials.

3.5    Over the years, AFK has established a system or pattern of business practices to successfully orchestrate the booking of its motivational assembly programs.   AFK's assembly booking system includes key information such as:

- Criteria for targeting schools
- Techniques to sell the program to schools
- Timing of marketing to schools
- Procedures for booking events

3.6    AFK also has compiled comprehensive school and student organization databases as part of its assembly presentation system.   These databases contain critical business information such as:

- The names, addresses, and telephone numbers of candidate schools
- The name and title of the contact person for each school
- The particular requirements of each school assembly
- Reference information and historical assembly and sales performance data related to each school
- Notes regarding any issues relevant to the various schools

3.7    Over the years, AFK also has established through several iterations a system or pattern of business practices to successfully orchestrate the presentation of its motivational assembly programs.  AFK's assembly presentation system includes key information such as:

- The structure of assembly presentations

COMPLAINT - 5 of 24

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

- Scripted themes of positivity, character education and teacher appreciation woven through object lessons in a show format for multiple audiences
- The use of particular yoyo tricks, in a particular number and a particular order
- The use of magic and other object lessons for teaching
- The stage presence of a single performer, unique style and delivery, and the use of particular materials and equipment
- Techniques establishing and incorporating audience interaction and participation
- Techniques involving students to sell the products
- Methods for pricing structure and parental involvement
- Maintaining contacts and repeat program presentation
- Many other pieces of the entire AFK customer experience that make it distinct from all other product assembly programs and assembly programs in general

AFK's unique blend of entertainment and positive character themes is loved by students, valued by teachers, supported by administrators and appreciated by the local communities.

3.8     AFK also has developed and prepared written and video materials related to the training or instruction of its booking agents and presenters.  These materials include such valuable information as the type and timing of booking contacts and follow-up with schools, the layout and set up for assembly presentations, the order and timing of yoyo tricks performed during a presentation, the timing and substance of audience involvement in the presentation, and other valuable techniques and approaches to best present information to children in a unique and memorable fashion,.  AFK has also prepared extensive and detailed marketing, sales and product materials that it has used successfully to promote its unique goods and services.

3.9     AFK treats its systems for the booking and presentation of its motivational assembly programs, its information databases, and its written and video instruction and

COMPLAINT - 6 of 24

training materials as proprietary and confidential information (hereinafter "Confidential Information").   AFK's confidential assembly presentation system has been developed and perfected over many years, and tailored to the unique needs of the education or school market. AFK's confidential assembly presentation system is directly responsible for the tremendous growth and success that AFK has had in the industry.  AFK's Confidential Information is the engine of its economic success and its mission.  Wrongfully appropriated, this Confidential Information is easily exploited by AFK's competitors to provide them with an unfair advantage over AFK.  AFK's Confidential Information is an extremely valuable asset of AFK.  AFK's Confidential Information is not known or readily ascertainable outside of AFK. Rather, AFK's Confidential Information is maintained in reasonable confidence by AFK, and only provided to AFK's staff and professional presenters on condition that these individuals agree to treat the information as proprietary and confidential.

3.10    AFK consistently has used particular visual and verbal themes as part of its motivational assembly programs establishing the AFK "brand."  As a result, the substance, style and appearance of the presentations have become known to the millions of students, faculty, assembly coordinators, administrators, and the public that have attended shows over the years, nearly twenty-three (23) million in total.  AFK's marketing and presentation of its uniquely branded programs serve to identify AFK's products and services and distinguish them from those of AFK's competitors.  As a result, AFK's assembly performances have become a valuable asset of AFK and a symbol of its goodwill in the general public.

3.11    AFK is the owner of copyrights in its various training, marketing, sales presentation materials and products.  AFK has complied in all respects with Title 17 of the United States Code and all other laws governing copyrights and has secured the exclusive rights and privileges in and to its copyrights.  AFK has obtained copyright registration for the audio visual production and script of its live motivational show entitled "The NED Show" on April 22, 2009, Registration No. PA0001701655.  On January 21, 2010, AFK also obtained

COMPLAINT - 7 of 24

copyright registration for the materials distributed to schools before and after The NED Show presentation (Registration Nos. TX0007179258 and TX0007179239, respectively), as well as AFK's School Curriculum (Registration No. TX0007179188).  In addition AFK, through its predecessor ADEI, holds copyright registrations for numerous documents related to its assembly presentation system.

## WRONGFUL CONDUCT OF DEFENDANT ATW

3.12    At all material times, Defendant ATW has been and continues to operate a business related to or involving the presentation of student yoyo assembly programs in direct competition with AFK.

3.13    Defendant ATW has intentionally recruited former AFK employees with access to and custody of AFK's Confidential Information and copyrighted material and entered agreements with Defendants Fox, Beresford, Laas and Steinmeyer to perform unlawful assembly programs competing with AFK.

3.14    Defendant ATW knew that the former AFK employees recruited by ATW were subject to agreements with AFK prohibiting disclosure or use of AFK's confidential information and trade secrets, and prohibiting the ex-employee's direct or indirect competition with AFK's business;

3.15    Defendant ATW, itself and in agreement with Defendants Fox, Beresford, Laas and Steinmeyer, has used and continues to use directly or indirectly AFK's Confidential Information and copyrighted and branded materials in ATW's competing business related to or involving the presentation of student yoyo assembly programs.

3.16    The yoyo assembly programs presented by Defendant ATW have a substance, style and appearance confusingly similar to AFK's motivational assembly programs, thereby misleading the public as to the source of the related goods and services.

COMPLAINT - 8 of 24

3.17     Defendant ATW has fostered confusion by using references to AFK events like White House performances to promote ATW's competing business in a manner intended to mislead and confuse schools and the public and unjustly take advantage of AFK's reputation in the industry.

3.18     In Defendant ATW's competing business related to or involving the presentation of student yoyo assembly programs, Defendant ATW intentionally has employed and continues to employ AFK confidential information and trade secrets to unfairly compete and subvert AFK's relationship with client schools.

3.19     AFK has at no time consented to ATW's use of AFK's Confidential Information, and copyrighted and branded material, or to ATW's competition with AFK in a manner that misleads and confuses the public.

3.20     ATW's wrongful actions have and will continue to cause irreparable harm to AFK.

### WRONGFUL CONDUCT OF DEFENDANT FOX

3.21     AFK (as its predecessor ADEI) employed Defendant Fox as a booking representative, manager and presenter of school programs from August 1996 to August 1997. As part of his employment, Fox had access to and gained custody of AFK's Confidential Information and copyrighted material.   Fox performed AFK shows, trained other AFK presenters, and managed other AFK personnel.  Fox also contributed to AFK show materials. As part of his employment, Fox was compensated for his contributions to AFK materials that became the property of AFK and part of AFK's Confidential Information, some of which was copyrighted by AFK after Fox was terminated.

3.22     For good and valuable consideration Defendant Fox entered an Employment Agreement with ADEI.  AFK is successor to that Employment Agreement, which provides, in pertinent part:

COMPLAINT - 9 of 24

(a)     That both during and after the term of his employment, Fox would not directly or indirectly use, disseminate or disclose any AFK Confidential Information, including but not limited to how ADEI advertises, markets the show, obtains bookings, organizes and schedules as well as the specific methods of encouraging and promoting product sales.

(b)     That AFK may enforce the confidentiality provisions of the Employment Agreement through injunction.

3.23   On or about October 27, 1998, Defendant Fox formed ATW and, in agreement with Defendants Beresford, Laas and Steinmeyer, has used and continues to use directly or indirectly AFK's Confidential Information and copyrighted and branded materials in the furtherance of ATW's competing business.

3.24   Defendants Fox and ATW have intentionally recruited former AFK employees with access to and custody of AFK's Confidential Information and copyrighted material.

3.25   Defendants Fox and ATW knew that the former AFK employees recruited by ATW were subject to agreements with AFK prohibiting disclosure or use of AFK's confidential information and trade secrets, and prohibiting the ex-employee's direct or indirect competition with AFK's business.

3.26   The yoyo assembly programs in competition with AFK presented by Defendant Fox, individually or in agreement with Defendants ATW, Beresford, Laas and Steinmeyer, use directly or indirectly AFK's Confidential Information and copyrighted and branded materials.

3.27   The assembly programs in competition with AFK presented by Defendant Fox, individually or in agreement with Defendants ATW, Beresford, Laas and Steinmeyer, have a substance, style and appearance confusingly similar to AFK's motivational assembly programs, thereby misleading the public as to the source of the related goods and services.

3.28   Defendant Fox, individually or in agreement with Defendants ATW, Beresford, Laas and Steinmeyer, further has fostered confusion by using references to AFK

COMPLAINT - 10 of 24

events like White House performances to promote his competing business in a manner intended to mislead and confuse schools and the public and unjustly take advantage of AFK's reputation in the industry.

3.29    In his competing business related to or involving the presentation of student assembly programs, Defendant Fox, individually or in agreement with Defendants ATW, Beresford, Laas and Steinmeyer, intentionally has employed and continues to employ the carefully considered strategy to contact schools identified by AFK and subverting AFK's relationship with those schools in order to take business from AFK.

3.30    AFK has at no time consented to Fox's use of AFK's Confidential Information, copyrighted and branded material, or to Fox's competition with AFK in a manner that misleads and confuses the public, or to his disparagement of AFK.  Fox's actions have and will continue to cause irreparable harm to AFK.

3.31    Fox's wrongful actions have and will continue to cause irreparable harm to AFK.

### WRONGFUL CONDUCT OF DEFENDANT BERESFORD

3.32    AFK (as ADEI before 2004) employed Defendant Beresford as a presenter of school programs for eleven (11) years until his termination in April 2007.  As part of his employment, Beresford had access to and gained custody of AFK's Confidential Information and copyrighted material.  Beresford performed AFK shows, trained other AFK presenters, and managed other AFK personnel.  Beresford also developed and wrote AFK training and show materials.  Also as part of his employment, Beresford was compensated for his contributions to AFK materials that became the property of AFK and part of AFK's Confidential Information, some of which was copyrighted by AFK after Beresford was terminated.

COMPLAINT - 11 of 24

3.33    For good and valuable consideration Defendant Beresford entered an Associate Intellectual Property Agreement (hereinafter IP Agreement) with ADEI.  AFK is successor to that IP Agreement.  The IP Agreement provides, in pertinent part:

(a)    That both during and after the term of his employment, Beresford would not directly or indirectly use, disseminate or disclose any AFK Confidential Information.

(b)    That for a period of three years from the date of termination of his employment, Beresford would not engage in, support, assist or become interested in, directly or indirectly, the development, promotion, distribution or sales of products or services of any business or enterprise similar to or the nature of which is competitive with AFK's business.

(c)    That both during and after the term of his employment, Beresford would not disparage AFK or its employees, business or products or interfere with AFK's relationships with its customers.

3.34    Upon information and belief, within the time prohibited by his IP Agreement with AFK and ongoing, Defendant Beresford, individually or in agreement with ATW, Fox, Laas and Steinmeyer, has engaged in a competitive business related to or involving the presentation of student assembly programs.

3.35    Defendant Beresford's competing business related to or involving the presentation of student assembly programs has used and continues to use directly or indirectly AFK's Confidential Information and copyrighted and branded materials.

3.36    The assembly programs in competition with AFK presented by Defendant Beresford, individually or in agreement with ATW, Fox, Laas and Steinmeyer,  have a substance, style and appearance confusingly similar to AFK's motivational assembly programs, thereby misleading the public as to the source of the related goods and services.

3.37    Defendant Beresford, individually or in agreement with ATW, Fox, Laas and Steinmeyer, further has fostered confusion by using references to AFK events like White House performances to promote his competing business in a manner intended to mislead and

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

confuse schools and the public and unjustly take advantage of AFK's reputation in the industry.

3.38     In his competing business related to or involving the presentation of student assembly programs, Defendant Beresford, individually or in agreement with ATW, Fox, Laas and Steinmeyer, intentionally has utilized and continues to utilize the carefully considered strategy to contact schools identified by AFK and subverting AFK's relationship with those schools in order to take business from AFK.

3.39     AFK has at no time consented to Beresford's use of AFK's Confidential Information, and copyrighted and branded material, or to Beresford's competition with AFK in a manner that misleads and confuses the public, or to his disparagement of AFK. Beresford's actions have and will continue to cause irreparable harm to AFK.

3.40     Beresford's wrongful actions have and will continue to cause irreparable harm to AFK.

## WRONGFUL CONDUCT OF DEFENDANT LAAS

3.41     AFK employed Defendant Laas as a presenter of school programs for a year until his resignation in September 2007.  As part of his employment, Laas had access to and gained custody of AFK's Confidential Information and copyrighted material in performing AFK shows.

3.42     For good and valuable consideration Defendant Laas entered an Associate Intellectual Property Agreement (hereinafter IP Agreement) with AFK.  The IP Agreement provides, in pertinent part:

(a)     That both during and after the term of his employment, Laas would not directly or indirectly use, disseminate or disclose any AFK Confidential Information.

(b)     That for a period of three years from the date of termination of his employment, Laas would not engage in, support, assist or become interested in, directly or

COMPLAINT - 13 of 24

indirectly, the development, promotion, distribution or sales of products or services of any business or enterprise similar to or the nature of which is competitive with AFK's business.

(c)     That both during and after the term of his employment, Laas would not disparage AFK or its employees, business or products or interfere with AFK's relationships with its customers.

3.43    Upon information and belief, within the time prohibited by his IP Agreement with AFK and ongoing, Defendant Laas, individually or in agreement with ATW, Fox, Beresford and Steinmeyer, engaged in a competitive business related to or involving the presentation of student assembly programs.

3.44    Defendant Laas's competing business related to or involving the presentation of student assembly programs has used and continues to use directly or indirectly AFK's Confidential Information and copyrighted and branded materials.

3.45    The assembly programs in competition with AFK presented by Defendant Laas, individually or in agreement with ATW, Fox, Beresford and Steinmeyer,  have a substance, style and appearance confusingly similar to AFK's motivational assembly programs, thereby misleading the public as to the source of the related goods and services.

3.46    Defendant Laas, individually or in agreement with ATW, Fox, Beresford and Steinmeyer, further has fostered confusion by using references to AFK events like White House performances to promote his competing business in a manner intended to mislead and confuse schools and the public and unjustly take advantage of AFK's reputation in the industry.

3.47    In his competing business related to or involving the presentation of student assembly programs, Defendant Laas, individually or in agreement with ATW, Fox, Beresford and Steinmeyer, intentionally has utilized and continues to utilize the carefully considered strategy to contact schools identified by AFK and subverting AFK's relationship with those schools in order to take business from AFK.

COMPLAINT - 14 of 24

3.48    AFK has at no time consented to Laas's use of AFK's Confidential Information, and copyrighted and branded material, or to Laas's competition with AFK in a manner that misleads and confuses the public, or to his disparagement of AFK. Laas's actions have and will continue to cause irreparable harm to AFK.

3.49    Laas's wrongful actions have and will continue to cause irreparable harm to AFK.

### WRONGFUL CONDUCT OF DEFENDANT STEINMEYER

3.50    AFK (as ADEI before 2004) employed Defendant Steinmeyer as a presenter of school programs for eleven and a half (11½) years until his resignation in February 2008. As part of his employment, Steinmeyer had access to and gained custody of AFK's Confidential Information and copyrighted material. Steinmeyer performed AFK shows, trained other AFK presenters, and managed other AFK personnel. Also as part of his employment, Steinmeyer was compensated for his contributions to AFK materials that became the property of AFK and part of AFK's Confidential Information, some of which was copyrighted by AFK after Steinmeyer was resigned.

3.51    For good and valuable consideration Defendant Steinmeyer entered an Associate Intellectual Property Agreement (hereinafter IP Agreement) with ADEI. AFK is successor to that IP Agreement. The IP Agreement provides, in pertinent part:

(a)    That both during and after the term of his employment, Steinmeyer would not directly or indirectly use, disseminate or disclose any AFK Confidential Information.

(b)    That for a period of three years from the date of termination of his employment, Steinmeyer would not engage in, support, assist or become interested in, directly or indirectly, the development, promotion, distribution or sales of products or services of any business or enterprise similar to or the nature of which is competitive with AFK's business.

COMPLAINT - 15 of 24

(c)     That both during and after the term of his employment, Steinmeyer would not disparage AFK or its employees, business or products or interfere with AFK's relationships with its customers.

3.52    Upon information and belief, within the time prohibited by his IP Agreement with AFK and ongoing, Defendant Steinmeyer, individually or in agreement with ATW, Fox, Beresford, and Laas, engaged in a competitive business related to or involving the presentation of student assembly programs.

3.53    Defendant Steinmeyer's competing business related to or involving the presentation of student assembly programs has used and continues to use directly or indirectly AFK's Confidential Information and copyrighted and branded materials.

3.54    The assembly programs in competition with AFK presented by Defendant Steinmeyer, individually or in agreement with ATW, Fox, Beresford and Laas, have a substance, style and appearance confusingly similar to AFK's motivational assembly programs, thereby misleading the public as to the source of the related goods and services.

3.55    Defendant Steinmeyer, individually or in agreement with ATW, Fox, Beresford and Laas, further has fostered confusion by using references to AFK events like White House performances to promote his competing business in a manner intended to mislead and confuse schools and the public and unjustly take advantage of AFK's reputation in the industry.

3.56    In his competing business related to or involving the presentation of student assembly programs, Defendant Steinmeyer, individually or in agreement with ATW, Fox, Beresford, and Laas, intentionally has utilized and continues to utilize the carefully considered strategy to contact schools identified by AFK and subverting AFK's relationship with those schools in order to take business from AFK.

COMPLAINT - 16 of 24

3.57    AFK has at no time consented to Steinmeyer's use of AFK's Confidential Information, and copyrighted and branded material, or to Steinmeyer's competition with AFK in a manner that misleads and confuses the public, or to his disparagement of AFK.

3.58    Steinmeyer's actions have and will continue to cause irreparable harm to AFK.

## V.  CAUSES OF ACTION

COUNT I:       COPYRIGHT INFRINGEMENT

4.1    AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 3.78 above.

4.2    AFK's written and video materials related to its performances, the teaching or instruction of its booking agents and presenters, and marketing, sales and product materials that it has used successfully to promote its unique goods and services, constitute original works protected under the copyright laws of the United States.

4.3    AFK has complied in all respects with Title 17 of the United States Code and all other laws governing copyrights and has secured the exclusive rights and privileges in and to its copyrights.  At all material times, AFK (as successor to ADEI since 2004) has been and continues to be the sole holder of all right, title, and interest in and to these copyrights.

4.4    Defendants obtained copyright protected information in AFK's materials and, without authorization, have knowingly, willfully, and maliciously copied and used AFK's copyrighted work to promote and present competing assembly programs;

4.5    Defendants have intentionally and unlawfully incorporated AFK's copyrighted material into student assemblies performed by Defendants in direct competition with AFK;

4.6    Defendants have infringed and continue to infringe AFK's copyrights in violation of 17 U.S.C. § 501 *et seq*.;

4.7    Defendants infringing activities were and are designed to provide Defendants with an economic advantage over AFK;

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

4.8     As a direct and proximate result of Defendants' infringements of AFK's copyrights, AFK has suffered and continues to suffer damages in an amount to be proven at trial;

COUNT II.  MISAPPROPRIATION OF TRADE SECRETS

4.9     AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 4.8 above.

4.10     AFK's Confidential Information, including its assembly presentation system along with its school databases and presenter and booking representative training materials, derives independent economic value to AFK, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and AFK has taken reasonable efforts under the circumstances to maintain its secrecy.

4.11     That AFK's Confidential Information constitutes trade secrets under the Washington Uniform Trade Secrets Act, RCW 19.108 *et seq.*;

4.12     That when Defendants obtained AFK's trade secrets, Defendants knew or had reason to know that they were under a duty to maintain its secrecy or limit its use;

4.13     That Defendants willfully and maliciously disclosed or used AFK's trade secrets without the express or implied consent of AFK;

4.14     That Defendants misappropriated AFK's Confidential Information, have used and disclosed and continue to use and disclose misappropriated trade secrets of AFK in violation of R.C.W. 19.108 *et seq*;

4.15     As a direct and proximate result of Defendants' misappropriation of AFK's trade secrets, AFK has suffered and continues to suffer damages in an amount to be proven at trial;

COMPLAINT - 18 of 24

COUNT III.  TRESPASS

4.16    AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 4.15 above.

4.17    The "Ned Show" is an image and brand with goodwill that is the exclusive property of AFK;

4.18    The market confusion caused by Defendants "School is Cool" show is an unlawful invasion upon the exclusive property right of AFK in the image, brand and goodwill of the "NED Show;"

4.19    Defendants are performing the "School is Cool" show with the knowledge that it is confused with AFK's "Ned Show" and with the intended result that AFK's exclusive property right in the "NED Show" image, brand and goodwill is invaded;

4.20    The Defendants' invasion of AFK's exclusive property right in the "NED Show" image, brand and goodwill by and through the Defendants' performance of the "School is Cool" show is reasonably foreseeable;

4.21    As a direct and proximate result of Defendants' trespass, AFK has suffered and continues to suffer substantial damage to its exclusive property right in the image, brand and goodwill of the "NED Show" in an amount to be proven at trial;


COUNT IV:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

4.22    AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 4.21 above.

4.23    At all material times, Defendants have been aware of AFK's business relationships with certain schools;

4.24    That Defendants knowingly and intentionally have used AFK's Confidential Information and their knowledge of AFK's business relationships to employ the carefully

COMPLAINT - 19 of 24

considered strategy to contact these schools to subvert AFK's relationship with these schools and to take business from AFK.

4.25   Defendants' actions constitute tortious interference with business relations between AFK and its existing and potential customers.

4.26   As a direct and proximate result of Defendants' tortious interference with AFK's business relations, AFK has suffered and continues to suffer damages in an amount to be proven at trial.

COUNT V:  BREACH OF CONTRACT

4.27   AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 4.26 above.

4.28   For good and valuable consideration, Defendants Fox, Beresford, Laas and Steinmeyer entered into the agreements with AFK (successor to ADEI as of 2004) with enforceable contractual obligations;

4.29   AFK performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of its agreements with Defendants Fox, Beresford, Laas and Steinmeyer;

4.30   That Defendants Fox, Beresford, Laas and Steinmeyer breached their agreements with AFK by failing to hold in trust AFK's Confidential Information and by directly or indirectly using, disseminating, or disclosing AFK's Confidential Information without authorization;

4.31   That Defendants Beresford, Laas and Steinmeyer breached their agreements with AFK by engaging in business directly or indirectly competitive with AFK related to the presentation of student assembly programs within three years of termination;

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

4.32    That Defendants Fox, Beresford, Laas and Steinmeyer breached their agreements with AFK by directly or indirectly disparaging AFK's reputation to its customers, potential customers, assembly attendees and to the general public;

4.33    As a direct and proximate result of the breaches of Defendants Fox, Beresford, Laas and Steinmeyer, AFK has suffered and continues to suffer damages in an amount to be proven at trial.

COUNT VI:  CONSPIRACY

4.34    AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 4.33 above.

4.35    That Defendants, and each of them, did combine to accomplish the unlawful purposes of infringing upon AFK's copyrights, or did combine to accomplish a lawful purpose by unlawfully infringing upon AFK's copyrights;

4.36    That Defendants, and each of them, did combine to accomplish the unlawful purposes of misappropriating AFK's confidential information and trade secrets, or did combine to accomplish a lawful purpose by unlawfully misappropriating  AFK's confidential information and trade secrets;

4.37    That Defendants, and each of them, did combine to accomplish the unlawful purposes of tortiously interfering with AFK's business relations, or did combine to accomplish a lawful purpose by unlawfully interfering with AFK's business relations;

4.38    That Defendants, and each of them, did combine to accomplish the unlawful purposes of breaching their agreements with AFK, or did combine to accomplish a lawful purpose by unlawfully breaching their agreements with AFK;

4.39    That Defendants, and each of them, did enter into an agreement to accomplish the conspiracy to unlawfully infringe AFK's copyrights, misappropriate AFK's confidential

COMPLAINT - 21 of 24

information and trade secrets, tortiously interfere with AFK's business relations, and breach their agreements with AFK.

4.40    That Defendants, and each of them, are jointly and severally liable for conspiracy.

4.41    As a direct and proximate result of Defendants' conspiracy, AFK has suffered and continues to suffer damages in an amount to be proven at trial.

COUNT VII:  INJUNCTIVE RELIEF

4.42    AFK incorporates and re-alleges the facts of the preceding paragraphs 1.1 through 4.41 above.

4.43    AFK has valid, registered copyrights in the performance of its character building and motivational school assemblies;

4.44    AFK has Confidential Information and branded materials.

4.45    Defendants have had access to AFK's Confidential Information and copyrighted and branded materials.

4.46    Defendants have unlawfully copied AFK's Confidential Information and copyrighted and branded materials.

4.47    Defendants are performing competing assemblies with directly and indirectly copied portions of AFK's copyrighted material and that are otherwise substantially and unlawfully similar to AFK's copyrighted material.

4.48    Defendants' infringement of AFK's copyrights and misappropriation of AFK's Confidential Information are a substantial threat to AFK;

4.49    AFK will suffer irreparable injury if Defendants wrongful conduct is not enjoined;

4.50    The injury to AFK and the public interest from Defendants' wrongful conduct outweighs the potential harm an injunction may do to Defendants;

COMPLAINT - 22 of 24

4.51    Enjoining Defendants' wrongful conduct will serve the public interest.

4.52    AFK is entitled to injunctive relief pursuant to 17 U.S.C. §502 and RCW 19.108.020.


PRAYER FOR RELIEF

WHEREFORE AFK prays for the following alternative and cumulative relief:

1.    Judgment granting permanent injunction enjoining Defendants from further performance, possession, misappropriation, use and/or infringement of AFK's copyrighted and/or branded material and Confidential Information, and directing Defendants, and each of them, to seize, recover, impound, and return to AFK all AFK copyrighted and/or branded material and Confidential Information, and to file with this Court and serve on AFK a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the terms of ordered relief;

2.    Judgment against Defendants, and each of them, for Infringement of AFK's copyrights and/or branded material, and awarding to AFK of damages in an amount to be proven at trial;

3.    Judgment against Defendants, and each of them, for Misappropriation of AFK's trade secrets, and awarding AFK damages in an amount to be proven at trial;

4.    Judgment against Defendants, and each of them, for Trespass upon AFK's exclusive property right in the image, brand and good will of the "NED Show," and awarding AFK damages in an amount to be proven at trial;

5.    Judgment against Defendants, and each of them, for breach of agreements with AFK, and awarding to AFK damages in an amount to be proven at trial;

6.    Judgment against Defendants, and each of them, for tortiously interfering with AFK's business relations, and awarding to AFK damages in an amount to be proven at trial;

COMPLAINT - 23 of 24

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

7.      Judgment against Defendants jointly and severally for civil conspiracy, and awarding to AFK of damages in an amount to be proven at trial;

8.      For Attorney Fees and costs under 17 U.S.C. § 505;

9.      For post judgment interest at 12% per annum until paid in full;

10.     For such other and further relief as the court may deem just and equitable.

RESPECTFULLY SUBMITTED this 5th day of November, 2013.

TACEY GOSS P.S.

*/S/* *C. Chip Goss*

By _____
    C. Chip Goss          WSBA #22112
    Attorneys for All For Kidz, Inc.
    330 112th Ave. NE, Suite 301
    Bellevue, WA  98004
    425.489.2878
    Chip@taceygoss.com

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM