HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALL FOR KIDZ, INC.,

        Plaintiff,

    v.

AROUND THE WORLD YOYO
ENTERTAINMENT COMPANY, et al.,

        Defendants.

CASE NO. C13-2001RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Plaintiff's motion for a preliminary injunction and Defendants' motion to compel arbitration.  For the reasons stated below, the court GRANTS the motion to compel arbitration (Dkt. # 18) and STAYS this action.  The court DENIES Plaintiff's motion for a preliminary injunction.  Dkt. # 4.

## II.  BACKGROUND

All for Kidz, Inc. ("AFK") and Around the World Yoyo Entertainment Company ("ATW") both perform shows in elementary schools featuring, among other things, yo-yo tricks.  All for Kidz, whose principal is Arne Dixon and whose corporate predecessor was Arne Dixon Entertainment, Inc., has staged these performances for almost 25 years.

Defendant John Fox worked for Arne Dixon Entertainment for about a year in 1996 and 1997.  He was primarily responsible for booking new shows, but he also began training as a performer.  AFK fired him.  Not long after, he founded ATW and began

ORDER – 1

performing yo-yo shows, initially with the cooperation of Mr. Dixon.  That cooperation soured.  By 2004, Arne Dixon Entertainment sued ATW in this District, alleging that ATW's shows infringed its copyrights and violated the Lanham Act's prohibition on false or misleading designations of origin, that Mr. Fox misappropriated AFK's trade secrets, that he breached his employment agreement, that he tortiously interfered with Mr. Dixon's business, and that his shows violated the Washington Consumer Protection Act.

The first suit ended in a January 2005 settlement agreement.  That agreement contained a clause requiring arbitration of "any and all disputes arising between [AFK and ATW, Mr. Fox, and his wife], including but not limited to any dispute arising out of the Settlement Agreement or the drafting thereof . . . ."  Fox Decl. (Dkt. # 19), Ex. A.

Since then, both ATW and AFK have continued their performances.  In recent years, ATW has used at least three performers who once worked for AFK.  Melvin Beresford was a performer at AFK from 1996 to 2006.  Mel Steinmeyer was an AFK performer from 1996 to 2008.  Leslie Laas performed for AFK from 2005 to 2006.  During their employment at AFK, all three employees signed an "Associate Intellectual Property Agreement" in which they agreed not to disclose confidential information and agreed not to compete with AFK for three years after termination.  ATW hired Mr. Beresford in 2011, Ms. Laas in 2010, and Mr. Steinmeyer in 2011.  All three of them performed in ATW shows.  Ms. Laas left ATW in 2012; Mr. Steinmeyer no longer works at ATW; it is not clear whether Mr. Beresford still works at ATW.

What is clear is that Mr. Dixon, through AFK, has once again sued ATW and Mr. Fox and his wife.  This time, he sued Mr. Beresford, Ms. Laas, and Mr. Steinmeyer (collectively the "Employee Defendants") as well.  The complaint is remarkably similar to Mr. Dixon's 2004 complaint, except that it names the Employee Defendants and contends that in addition to their liability for copyright infringement, trade secret misappropriation, and the like, they are liable for breaching their employment agreements

ORDER – 2

with AFK.  Unlike the 2004 complaint, there are no allegations of Lanham Act violations or violations of the Washington Consumer Protection Act.  At the same time that AFK sued, it moved for a sweeping preliminary injunction that would prohibit ATW and all of the individual Defendants from performing shows.  AFK's motion for an injunction did not mention the prior lawsuit, the 2005 settlement agreement, or its arbitration clause.

ATW moved to compel arbitration.  It brought its motion on behalf of itself and Mr. Fox and his wife, the signatories to the settlement agreement.  It noted, however, that AFK had refused to stipulate to arbitration in part because it believed it had no obligation to arbitrate its claims against the Employee Defendants.  In opposition to the motion, AFK conceded that its claims against ATW and Mr. Fox and his wife were arbitrable, but insisted that its claims against the Employee Defendants were not.  It also insisted that the court should grant a preliminary injunction pending the conclusion of arbitration.

The court now considers the parties' requests.

### III.  ANALYSIS

**A.     Arbitration**

Everyone agrees that AFK's claims against ATW and Mr. Fox and his wife must proceed to arbitration.  The Employee Defendants, however, are not signatories to the 2005 settlement agreement or its arbitration clause.  ATW asserts that the Federal Arbitration Act ("FAA") governs its motion to compel arbitration, and AFK does not contend otherwise.  ATW argues that the FAA mandates arbitration not only of AFK's claims against it and Mr. Fox and his wife, but of AFK's claims against the Employee Defendants.

Before wading into the thorny question of whether the Employee Defendants can force AFK to arbitrate its claims against them, the court observes that the question is likely to have little practical significance.  AFK apparently believes that this court would permit it to pursue its claims against ATW and Mr. and Mrs. Fox in arbitration while

ORDER – 3

1   simultaneously pursuing its claims against the Employee Defendants in this court.  The

2   arbitration to which AFK agreed will likely dispose, by issue preclusion, of all claims

3   against the Employee Defendants.  Every allegedly wrongful act that the Employee

4   Defendants allegedly committed, they committed in the scope of their employment at

5   ATW.  In order to prove its claims against ATW, AFK will likely attempt to prove the

6   same facts that it would have to prove to prevail against the Employee Defendants.  AFK

7   proffers no reason that the court should permit it to prove those facts simultaneously in

8   arbitration and in this court, and the court can conceive of no reason that it would permit

9   AFK to squander adjudicative resources in that fashion.  Even if AFK can avoid

10  arbitration of its claims against the employees, the court would stay this litigation

11  pending the outcome of the arbitration.  Under these circumstances, AFK's refusal to

12  arbitrate its claims against the Employee Defendants suggests that it is more interested in

13  increasing the burden on its former employees than it is in resolving its claims efficiently.

14          Putting practicalities aside, "a litigant who is not a party to an arbitration

15  agreement may invoke arbitration under the FAA if the relevant state contract law allows

16  the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122,

17  1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

18  Washington courts, like federal courts, have recognized that both equitable estoppel and

19  "normal contract and agency principles" permit nonsignatories to arbitration agreements

20  to compel arbitration in some circumstances.  *McClure v. Davis Wright Tremaine*, 890

21  P.2d 466, 467 (Wash. Ct. App. 1995); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218,

22  1232 (9th Cir. 2013) (applying California agency law).  The parties focus on whether

23  equitable estoppel applies in this case, but the court focuses on agency law, which

24  provides a straightforward answer: employee defendants sued for acts within the scope of

25  their employment may defensively invoke their employer's agreement to arbitrate

26  disputes encompassing those acts.

27

28  ORDER – 4

Although no Washington court has squarely decided the issue, the court is convinced that Washington law permits the Employee Defendants to invoke the settlement agreement's arbitration clause as agents of ATW.  As noted, Washington recognizes that agency principles apply to determining the applicability of an arbitration contract to a nonsignatory.  *McClure*, 890 P.2d at 467.  In *McClure*, the court considered whether a law firm that was not a signatory to an arbitration clause in a partnership agreement could nonetheless invoke the clause to compel arbitration of a partner's breach of fiduciary duty claim against it arising out of the firm's representation of the partnership.  *Id.* at 466.  Although the court found numerous reasons to uphold the order compelling arbitration, including that the arbitration clause at issue was broad enough to encompass claims against nonsignatories, it found that agency principles provided an alternate basis for upholding the order.  *Id.* at 467-68.  It noted that the law firm acted as the partnership's agent and that the partner had not "dispute[d] [the law firm]'s contention that agents can enforce arbitration agreements made by their principals." *Id.* at 468.  In this case, AFK agreed to an arbitration clause in a settlement agreement with a corporate entity that it knew employed various performers to engage in the allegedly wrongful conduct that led to the settlement agreement.  It strains credibility to believe that either of the parties to that agreement intended to permit the other to avoid arbitration by the simple expedient of suing employees rather than the corporate entity.  *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, No. 13-1149, 2014 U.S. App. LEXIS 5276, at *21 (1st Cir. Mar. 19, 2014) ("Since [the company] could operate only through the actions of its employees, it would have made little sense to have agreed to arbitrate if the employees could be sued separately without regard to the arbitration clause.")  For that reason, the arbitration clause itself (which covers "any and all disputes arising between" ATW and AFK) likely implicitly sweeps in claims against the corporate employees.  But even if it did not, the court concludes that Washington agency law would permit the

ORDER – 5

1   Employee Defendants to invoke the arbitration clause defensively as to claims based on

2   acts within the scope of their employment.

3          The court notes that jurisdictions across the country uphold a nonsignatory

4   employee's right to invoke an arbitration clause defensively in a case arising out of his

5   acts on behalf of his signatory employer.  Among those jurisdictions is the Ninth Circuit,

6   which held in *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th

7   Cir. 1986), that brokerage employees sued by a client for acts in the scope of their

8   employment could invoke the arbitration agreement between the brokerage and the client.

9   The *Letizia* court reached that conclusion by applying "federal substantive law," *id.* at

10  1187, which is perhaps inconsistent with the Supreme Court's later pronouncement that

11  state law governs the question of "who is bound" by an arbitration clause.  *Arthur*

12  *Andersen*, 556 U.S. at 630-31.

13         Even if the Ninth Circuit's application of federal substantive law in *Letizia* is no

14  longer good law, the court observes that every jurisdiction to consider the question has

15  reached the same conclusion.  *See*, *e.g.*, *Grand Wireless*, 2014 U.S. App. LEXIS 5276, at

16  *21-22 (noting that "a number of our sister circuits have addressed the issue, and all have

17  held that an agent is entitled to the protection of her principal's arbitration clause when

18  the claims against her are based on her conduct as an agent"); *Tracinda Corp. v.*

19  *DaimlerChrysler AG*, 502 F.3d 212, 223-24 (3d Cir. 2007) ("[B]ecause a principal is

20  bound under the terms of a valid arbitration clause, its agents, employees, and

21  representatives are also covered under the terms of such agreements.") (citation omitted);

22  *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 956 (N.D. Cal. 2012) ("Courts have

23  generally applied the agency principle to prevent parties from evading arbitration

24  obligations by suing a signatory's agents instead of the principal."); *Stevens v. Phillips*,

25  852 So. 2d 123, 129 (Ala. 2002) ("A party should not be able to avoid an arbitration

26  agreement merely by suing an employee of a principal.") (citation omitted); *McMillan v.*

27

28  ORDER – 6

*Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App. 2001); *Livingston v. Metro. Pediatrics, LLC*, 227 P.3d 796, 805 & n.7 (Or. Ct. App. 2010) (reversing and remanding with instructions to grant nonsignatory employees' motion to compel arbitration); *B.A.P., L.L.P. v. Pearman*, 250 P.3d 332, 339-40 (Okla. Civ. App. 2011) (same); *Madden v. Ellspermann*, 813 S.W.2d 51, 53-54 (Mo. Ct. App. 1991) (holding that where employee defendant's "acts were committed in the course and scope of his employment," he was "entitled to the benefit of an arbitration agreement to which his employer . . . is a party").  AFK cites no authority to the contrary, and the court is not aware of any.

Finally, the court considers AFK's argument that ATW should not be able to compel arbitration as to the Employee Defendants because it did not expressly request that relief in its motion.  Although ATW did not expressly request arbitration on behalf of the Employee Defendants in the opening brief of its motion, the motion to compel arbitration notes that AFK refused ATW's request to compel arbitration because of its belief that the Employee Defendants could not compel arbitration.  Defs.' Mot. (Dkt. # 18) at 5.  AFK recognized that the arbitration rights of the Employee Defendants were at issue, because it argued both in response to ATW's informal arbitration demand and in opposition to its motion to compel arbitration that the Employee Defendants could not invoke equitable estoppel against AFK.  AFK had notice of the Employee Defendants' arbitration demand and an opportunity to oppose that demand.  Nothing more is required.

**B.      Preliminary Injunction**

Having determined that an arbitrator will resolve this dispute, the court now considers whether to issue an injunction pending arbitration.  Because arbitrators sometimes lack the power to issue injunctive relief, or procedural mechanisms to do so speedily, courts have recognized the right of parties to an arbitration to seek "equitable relief in aid of arbitration."  *Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d

ORDER – 7

1017, 1020 (W.D. Wash. 2011) (quoting *Toyo Tire Holdings of Am., Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010)).

The court may issue a preliminary injunction where the moving party establishes (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). In cases where clear irreparable harm would result and there are serious questions going to the merits, a court may issue provisional relief for the purpose of permitting it to consider the merits of the dispute on a reasonable timetable. *Id.* at 1134. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (noting that it appears settled that *Winter* did not "change the requisite showing for any individual factor [in the Ninth Circuit's preliminary injunction analysis] other than irreparable harm").

The court focuses first on AFK's evidence of irreparable harm, which is sorely lacking. AFK's motion for injunctive relief relied on a single declaration. That declaration, from Scott Hopper, AFK's Vice President, has just two paragraphs addressing AFK's harm. One contains the assertion that Defendants' performances are "causing serious, long-lasting, and incalculable harm to AFK's competitive position vis-à-vis ATW. AFK's losses are difficult to measure and monetary damages would be insufficient to remedy the harms." Hopper Decl. (Dkt. # 7) ¶ 17. The next paragraph states as follows:

> ATW's substandard, infringing performances have been and are taking away potential AFK clients, damaging the AFK brand through confusion, and diminishing or in some cases foreclosing the market for AFK's assembly[.] AFK has lost sales directly to ATW. AFK has attempted to

ORDER – 8

return to schools where it has performed previously only to find that ATW had already been there.  There is confusion that the ATW show is AFK.  In the insular school community, ATW's substandard yoyo assemblies have caused some schools to no longer be interested in having any yoyo assembly.

Hopper Decl. (Dkt. # 7) ¶ 18.

Mr. Hopper's declaration is not adequate to establish a likelihood of irreparable harm.  First, the court has no idea of the basis for Mr. Hopper's knowledge.  He attaches no documents to support any of his assertions.  Although he contends that AFK has "lost sales" to ATW, he does not identify a single lost sale.  This is notable by itself, but more so in light of Mr. Hopper's assertion that AFK's 60 full-time employees (including 17 performers) perform assembly programs at 5,500 schools per year for over 2.25 million students.  Hopper Decl. (Dkt. # 7) ¶ 3.[1]  If ATW is taking AFK's shows, it ought to be easy to provide evidence proving as much.  Similarly, Mr. Hopper has no specific evidence of confusion between ATW and AFK, and no evidence of any school that has declined a yo-yo show because of ATW's allegedly substandard performances.  Finally, although AFK requests that the court enjoin the Employee Defendants as well, it offers no evidence at all that they continue to work for ATW or perform in its shows.

When ATW pointed out that AFK had provided virtually no evidence of irreparable harm, AFK used its reply brief to offer four new declarations.  That is poor litigation practice in any event, but is particularly egregious in light of AFK's insistence that ATW's failure to explicitly request arbitration on behalf of the Employee Defendants until the reply brief of its motion to compel was fatal to their request.  ATW has asked the court to strike the late-filed evidence.  The court declines to strike the evidence because considering it will not prejudice ATW.

---

[1] If Mr. Hopper's figures are accurate, AFK's performers each perform more than 320 shows per year, which is more than one show every weekday, assuming that they perform all year, not just during the academic year.

ORDER – 9

AFK's four late-filed declarations do little more than Mr. Hopper's declaration to establish AFK's harm.  The first of those declarations is from Mr. Dixon, who states nothing regarding the harm that ATW's performances cause.  A declaration from Paul Stetler, who trains AFK's performers, is similarly silent as to the harm that ATW's shows cause.  The only declarations that address harm are from Kristina Cox and Bryan Clark, both of whom are AFK account executives.  Mr. Clark declares that a school in Texas inadvertently booked a show in autumn 2013 with ATW, believing that it was AFK.  Clark Decl. (Dkt. # 30-2).  He also declares, without providing any details, that "many similar instances" have occurred in his ten years at AFK.  *Id.*  Nothing in his declaration suggests that ATW did anything to promote this confusion.[2]  His declaration suggests, at most, that some school personnel confuse ATW with AFK for no reason other than that they both offer yo-yo shows.  Ms. Cox, who has worked at AFK for more than six years, declares that there have been "numerous instances of schools refusing to have our show because they had previously had ATW and had been dissatisfied with the experience, or had recently had ATW and were not interested in hosting another show involving a yoyo sale."  Cox Decl. (Dkt. # 30-3).  Ms. Cox offers no details at all to support her assertion.  Unlike Mr. Clark, she does not point to even a single specific example.  Like Mr. Clark, she notes that some schools are "unable to separate AFK from ATW in their selection of programs."  *Id.*  She does not suggest that this is because of anything ATW does to promote confusion.  Finally, the court observes that both Mr. Clark and Ms. Cox implicitly base their statements on hearsay evidence from unnamed parties as to their experiences with ATW.

On this thin evidence, the court concludes that AFK has not demonstrated that it is likely to suffer irreparable harm in the absence of an injunction.  ATW declares, through

---

[2] It is not clear that AFK has stated any claims for which confusion between ATW and AFK is a cognizable harm.  The Lanham Act and state unfair competition law are the standard means to remedy false or misleading designations of origin.  In this suit, AFK has not invoked the Lanham Act or any state's unfair competition law.

ORDER – 10

Mr. Fox, that it plans to perform 200 shows in the remainder of this academic year. Fox Decl. (Dkt. # 23) ¶ 24. There is no basis to conclude that any of those shows, or any of the 400 shows ATW hopes to perform in the 2014-15 academic year, *id.* ¶ 2, will cause AFK irreparable harm.

Relying on outdated precedent, AFK suggests that with respect to its copyright infringement claims, it may rely on a presumption of irreparable harm. AFK is mistaken:

> We conclude that presuming irreparable harm in a copyright infringement case is inconsistent with, and disapproved by, the Supreme Court's opinions in *eBay* and *Winter*. Thus, our long-standing precedent finding a plaintiff entitled to a presumption of irreparable harm on a showing of likelihood of success on the merits in a copyright infringement case . . . has been effectively overruled.

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).

Because AFK has failed to establish the likelihood of irreparable harm, the court need not consider the remaining factors relevant to injunctive relief. In particular, the court declines to evaluate the merits of AFK's claims. The court prefers not to suggest the outcome of the arbitration to which the parties have agreed.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to compel arbitration (Dkt. # 18) and DENIES Plaintiff's motion for a preliminary injunction (Dkt. # 4). The court STAYS this action pending the outcome of arbitration. Plaintiff must update the court on the status of the arbitration on June 15 and on the 15th day of every second month thereafter, and must notify the court promptly of any resolution of the arbitration.

Dated this 8th day of May, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11